UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALYCE COUCH, Independent Administrator for the Estate of BILLY COUCH, | ) ) ) ) |
| Plaintiff, | ) 11 C 2536 ) ) |
| v. | ) Judge George M. Marovich ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alyce Couch, as Independent Administrator for the Estate of Billy Couch ("Couch") filed against defendant United States of America (the "United States" or the "government") a two-count complaint. In Count I, the plaintiff asserts a claim for negligence under the Federal Tort Claims Act ("FTCA"). In Count II, plaintiff asserts an Illinois state-law claim for wrongful death. Defendant United States moves for summary judgment on the theory that Billy Couch was its borrowed employee when he was injured at work and, therefore, cannot bring a claim under the Federal Tort Claims Act. For the reasons set forth below, the Court grants the motion for summary judgment.

**I.   Background**

Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website (and has mentioned in multiple opinions), the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. For example, facts included in a party's brief but not in its statement of facts are not considered by the Court because to do so would rob the other party of the opportunity to show that such facts are disputed. Where one party supports a fact with admissible evidence and the other party fails

to controvert the fact with citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004).[1]  It is not enough at the summary judgment stage for either party to *say* a fact is disputed.  The Court considers a fact disputed *only* if both parties put forth admissible evidence of his or its version of the fact.  Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed.

Alyce Couch filed suit against the United States after Billy Couch was injured while working as a truck driver for his employer, B & B Trucking Inc. ("B & B").  When he was injured, Couch was making a delivery to the Elk Grove Village postal facility, which (as part of the United States Postal Service ("USPS")) is operated and controlled by the United States.

The USPS, to save money, contracts out certain mail delivery services that were once performed by USPS employees.  Among these contracts are Highway Contract Route ("HCR") contracts, pursuant to which a company provides drivers who perform mail delivery services that were once performed by USPS employees.  B & B was one of the entities with whom the USPS entered into HCR contracts.  In fact, B & B was founded in 1969 for "the express purpose of transporting mail for the United States Postal Service."  According to B & B, its primary business is transporting mail for the Postal Service under HCR Contracts.  B & B earns 90% of

---

[1]For example, ¶ 9 of defendant's statement of facts is deemed admitted because, while plaintiff disputed it, plaintiff failed to cite evidence.  Similarly, ¶ 5 of defendant's statement is deemed admitted, because, in disputing the paragraph, plaintiff cited a 53-page deposition transcript without citing a specific page.  *See Ammons*, 368 F.3d at 817-818 ("where a non-moving party denies a factual allegations by the party moving for summary judgment, that denial must include a specific reference to the affidavit or other part of the record that supports such a denial.  Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate.  A court should not be expected to review a lengthy record for facts that a party could have easily identified with greater particularity.")

its revenues from HCR contracts with the USPS. B & B owns the trucks it uses to transport mail for the USPS.

The HCR at issue in this case (i.e., the one Couch was working under when he was injured) was HCR #607L9. Under that contract, about 60% of the cost was allocated to wages and employee benefits, about 20% was allocated to fuel, about 7% was allocated to vehicles (and maintenance thereof), and about 3% was allocated to tolls. To perform the contract terms, B & B employed drivers (including Couch) to perform the mail-delivery services. In addition to drivers, B & B employs dispatchers, custodians, mechanics and administrators. B & B screens, hires, supervises, pays and trains its employees. To train its drivers, B & B provided them an intensive, two-to-three-day program. As a B & B driver, Couch possessed a badge which allowed him access to postal facilities. The badge stated that he was a non-employee of the USPS.

B & B's drivers are covered by workers' compensation insurance policies purchased by B & B in case they are injured while working under an HCR contract. The United States, in turn, reimburses B & B for the cost of providing that workers' compensation insurance. Specifically, HCR #607L9's cost estimate contains a line-item for workers' compensation insurance. While the terms of HCR #607L9 require B & B to maintain certain liability insurance, the terms do not require B & B to maintain workers' compensation insurance. After Couch was injured while performing mail delivery services under HCR #607L9, B & B's workers' compensation insurance paid benefits to Couch under the Illinois Workers' Compensation Act.

## II. <u>Summary judgment standard</u>

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.  Discussion

The United States argues that it is entitled to summary judgment on the FTCA claim, because, as a borrowing employer, the United States would be immune from tort liability under to the Illinois Workers' Compensation Act. The parties agree (and the Court concurs) that the Seventh Circuit has set out the relevant law in *Luna v. United States*, 454 F.3d 631 (7th Cir. 2006) and *Belluomini v. United States*, 64 F.3d 299 (7th Cir. 1995). In *Belluomini*, the Seventh Circuit concluded that the United States was immune from liability for injuries to a Court Security Officer killed while on duty protecting the Dirksen Federal Building, because his employer had a borrowing/lending employer relationship with the United States under the Illinois Workers' Compensation Act. *Belluomini*, 64 F.3d 299. Similarly, in *Luna*, the Seventh Circuit concluded that the United States was immune from suit for an injury to an employee of a company with whom the United States Navy borrowed employees. *Luna*, 454 F.3d 631.

The Federal Tort Claims Act is a limited waiver of the federal government's sovereignty. *Luna v. United States*, 454 F.3d 631, 634 (7th Cir. 2006). Under the FTCA, the United States is liable "for personal injuries as a result of its negligence to the same extent that a private person would be liable under the law of the place where the negligence occurred." *Luna*, 454 F.3d at 634 (citing 28 U.S.C. § 1346(b)(1)). Couch was injured at work in Illinois, and, in Illinois, what stands in the way of a private employer's liability for negligence is the Illinois Workers' Compensation Act ("IWCA"). The IWCA provides the exclusive remedy for workers injured on the job: employees get a guaranteed a remedy, and employers get immunity from tort claims. *Luna*, 454 F.3d at 634.

The IWCA's immunity extends to borrowing employers. *Luna*, 454 F.3d at 634 ("Loaning and borrowing employers share immunity from tort liability under the IWCA"); *Belluomini*, 64 F.3d at 302 ("both [the borrowing and loaning] employers share the immunity from tort liability conferred by the [IWC] Act").

The United States argues that it is a borrowing employer for purposes of the IWCA, such that it is immune from tort liability. According to the Seventh Circuit, under Illinois law, there are two tests for determining whether a borrowing/loaning employer relationship is present: (1) the "statutory" test set out in the IWCA; and (2) the common-law "control" test. *Belluomini*, 64 F.3d at 302. The United States argues that it is a borrowing employer under the statutory test.

The IWCA defines a loaning employer:

> An employer whose business or enterprise or a substantial part thereof consists of hiring, procuring, or furnishing employees to or for other employers operating under and subject to the provisions of this Act for the performance of the work of such other employers and who pays such employees their salary or wages notwithstanding that they are doing the work of such other employers shall be deemed a loaning employer within the meaning and provisions of this Section.

820 ILCS 305/1(a)(4).  Thus, to "establish a borrowed employment relationship under the statute:  (1) a substantial portion of the alleged loaning employer's business must consist of furnishing employees to do the work of other employers; (2) the loaning employer must pay the employee's wages even though that employee is working for another employer; and (3) the borrowing employer must be operating under the Act." *Belluomini*, 64 F.3d at 302.

The Court considers these elements in reverse order.

A.     **The United States Postal Service operates under the Act**

The Court first considers whether the United States meets the third factor, i.e., whether it, as borrowing employer, is operating under the Illinois Workers' Compensation Act.  As the Seventh Circuit explained in *Belluomini*, the appropriate question is "not whether the United States *itself* is operating under the Act, but whether a *private analog* would be operating under the Act." *Belluomini*, 64 F.3d at 303 (emphasis added).  The Seventh Circuit went on to compare the IWCA's list of occupations that "trigger automatic coverage" under the IWCA to the services performed by the relevant employees in that case.  The Seventh Circuit explained that the Marshals service was "empowered to provide for the security of the federal court" and hired (via contracting with a private company) Court Security Officers to perform that task.  The Seventh Circuit concluded that a private entity performing a similar function would fall within IWCA Section 3, which triggers automatic coverage for any enterprise engaged in "protection and safeguarding of employees or the public therein." *Belluomini*, 64 F.3d 299 (internal citations omitted).

In this case, the United States argues that the work of the United States Postal Service, including the work performed by B & B employees, is work that, if performed by a private

analog, would fall within one of the occupations that trigger automatic coverage under the IWCA. The Court agrees. The provisions of the IWCA "apply automatically" to "the following enterprises or businesses which are declared to be extra hazardous, namely:

> \* \* \*
> 3. Carriage by land, water or aerial service and loading or unloading in connection therewith, including the distribution of any commodity by horsedrawn or motor vehicle where the employer employs more than 2 employees in the enterprise or business.
> \* \* \*
> 15. Any business or enterprise in which electric, gasoline or other power driven equipment is used in the operation thereof.

820 ILCS 305/3. Here, there is no dispute that USPS is in the business of transporting (i.e., carrying by land) and delivering mail, and there is no dispute that gasoline-powered vehicles are used in its operations. Thus, it is clear, as a matter of law, that if the USPS were a private entity, it would be operating under the IWCA. Accordingly, the third part of the test is met.

Alyce Couch argues that this case is distinguishable from *Belluomini*, because, here, the terms of the contract do not require B & B to provide workers' compensation insurance, while the contract at issue in *Belluomini* did require the CSO's employer to provide workers' compensation insurance. The Court agrees with Couch that, even though the United States *paid* for B & B's employees to have workers' compensation insurance, the terms of the contract did not explicitly require the insurance. It matters not. First, in *Belluomini*, the Seventh Circuit's discussion about workers' compensation was not necessary to its conclusion that the United States was operating under the IWCA; it was an additional sufficient reason. *Belluomini*, 64 F.3d at 303 ("Even if we were to hold that a private analog was, for some reason, not subject to the automatic coverage provisions of section 3, we would be compelled to arrive at the same result" by the fact that the contract required the CSO's employer to provide workers'

compensation insurance.). Second, the reason the Seventh Circuit focused on the contract provision requiring the CSOs' employer to provide workers' compensation insurance was because that provision "performed the functional equivalent of providing that coverage itself." *Belluomini*, 64 F.3d at 303. In this case, the fact that the USPS reimburses B & B for providing workers' compensation insurance, likewise, performs the functional equivalent of providing that coverage itself.

For these reasons, the Court concludes that the United States was, as a matter of law, operating under the IWCA.

### B. B & B pays the employees' wages

The Court next considers whether B & B pays its employees wages. The answer is undisputedly yes.

### C. Substantial part of B & B's business

Finally, the Court considers whether a substantial part of B & B's business is the hiring, procuring, or furnishing of employees to do the work of other employers. In *Luna* and *Belluomini*, the Seventh Circuit answered yes, but Couch thinks this case is different. In *Luna*, the Seventh Circuit explained:

> RCI easily satisfies the test for a loaning employer. It is undisputed that a substantial part of its business involved hiring, procuring, or furnishing employees to do jobs for governmental and private agencies. In fact during more than eighteen years as a governmental contractor, RCI drew over 90% of its revenues from contracts like the one with the Navy in this case.

*Luna*, 454 F.3d at 637. The terms of that contract were not included in the opinion. In *Belluomini*, the Seventh Circuit explained:

> In his deposition, GSSC's Vice President, Andrew Pierucki, acknowledged that 'a substantial portion of [GSSC]'s business involves supplying security personnel to

the government.' He estimated that between eighty and eighty-five percent of his business consists of supplying CSOs to the government. GSSC's remaining employees handle administrative matters at its Minneapolis headquarters.

*Belluomini*, 64 F.3d at 302-303. The terms of that contract were not included in the opinion.

Plaintiff argues that B & B was not in the business of furnishing employees to do the USPS's work. Plaintiff relies heavily on a recent decision in *Jorden v. United States*, Case No. 09 C 6814, 10 C 3144, 2011 WL 4808165 (N.D. Ill. Oct. 11, 2011). The facts of *Jorden* are similar to the facts of this case. In *Jorden*, the plaintiff was employed by a company that contracted with the USPS to transport mail between postal facilities. There, the court distinguished *Luna* and *Belluomini* by explaining that "Eagle Express was in the business of furnishing inter-post-office transportation services, not employees, to the Postal Service." *Jorden*, at *3. The United States argues that the distinction is semantic.

The question, thus, is whether more than a semantic difference exists between what the court in *Jorden* describes as a contract for services and the what the Seventh Circuit in *Luna* and *Belluomini* calls a contract for employees. This Court does not see a clear distinction between a contract for services and a contract for employees, because most services are performed by employees, although some services are more labor-intensive than others. The contract that the Seventh Circuit in *Belluomini* described as a contract to supply Court Security Officers could easily be described as a contract for security services. Indeed, in her brief, Alyce Couch described the *Belluomini* contract as one for security services. (Couch brief at 8) ("Conversely, the plaintiff in *Belluomini* was paid by a private company to provide security services at a federal courthouse."). Similarly, as the United States points out, while the Seventh Circuit described the company in *Luna* as being "in the business of supplying employees to governmental agencies"

(*Luna*, 454 F.3d at 633), the district court had described the same company as "provid[ing] a variety of professional and technical services to both the federal government and the private sector." *Luna v. United States*, Case No. 00 C 1329, 2001 WL 664445 at *1 (N.D. Ill. June 13, 2001). The district court had also described the contract at issue in *Luna* as a contract "whereby RCI employees provided administrative services in support of the students and staff at the SSC." *Luna*, 2001 WL 66445 at *1. These descriptions suggest to this Court that the distinction between a contract for services and a contract for employees will often be semantic. Thus, the fact that B & B could accurately be described as a company providing mail delivery services does not, in this Courts' opinion, exclude the possibility that a substantial part of B & B's business was furnishing employees for mail delivery.

In this case, the undisputed facts convince this Court that a substantial portion of B & B's business consisted of furnishing employees to do the work of other employers. Ninety percent of B & B's revenues came from HCR contracts like the one under which Couch was working when he was injured. Under those HCRs, B & B employees were performing the USPS's work. The USPS's mission is to transport and deliver mail. Under the HCRs, B & B was transporting mail between mail facilities, i.e., doing the USPS's work. It was work that USPS employees had performed previously, but the USPS decided it was cheaper to have someone else's employees do the work. B & B clearly furnished the employees who did that work: B & B hired them, trained them and paid them. True, B & B also furnished the trucks (the cost of which was about 10% of the contract cost) and the fuel (which was about 20% of the contract cost), but that does not subtract from the fact that B & B furnished the employees. The cost of the drivers (for wages and benefits) amounted to about 60% of the contract cost. Thus, about 60% of the cost of

-10-

contracts that constituted 90% of B & B's business was for furnishing employees. That constitutes a substantial amount of B & B's business.

The Court appreciates that reasonable people might disagree about the application of the law to these facts, but the facts are undisputed. This Court concludes that the United States has a borrowing/loaning employer relationship with B & B and that Billy Couch was a borrowed employee of the United States.

Accordingly, the United States would be immune from tort liability under the Illinois Workers' Compensation Act and is not liable under the FTCA. The United States is entitled to judgment as a matter of law on plaintiff's Federal Tort Claims Act claim.

Because the Court has resolved the only claim over which it has original jurisdiction, it exercises its discretion to decline supplemental jurisdiction over plaintiff's state-law claim. 28 U.S.C. § 1367(c)(3).

**IV.     Conclusion**

For the reasons set forth above, the Court grants defendant's motion for summary judgment. The United States is granted summary judgment on Count I. Count II is dismissed without prejudice. Case dismissed.

ENTER:

George M. Marovich
United States District Judge

DATED: December 14, 2011